# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SABRA V. GILLINS,
　　　　　Appellant,

　　　　v.

UNITED STATES POSTAL SERVICE,
　　　　　Agency.

DOCKET NUMBER
CH-0353-14-0337-I-2

DATE: February 27, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Sidney M. Fulwood, Supply, North Carolina, for the appellant.

Roderick D. Eves, Esquire, St. Louis, Missouri, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which dismissed her restoration appeal for lack of Board jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, FIND that the appellant has shown by preponderant evidence that

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the agency arbitrarily and capriciously denied her restoration, and order the agency to conduct a search of the local commuting area for available positions within the appellant's medical restrictions. We REMAND the appellant's disability discrimination claim to the regional office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        The following facts, as further detailed in the initial decision, do not appear to be materially disputed. The appellant most recently held a level 4 Mail Handler position. *Gillins v. U.S. Postal Service*, MSPB Docket No. CH-0353-14-0337-I-1, Initial Appeal File (IAF), Tab 1 at 1; *Gillins v. U.S. Postal Service*, MSPB Docket No. CH-0353-14-0337-I-2, Refiled Appeal File (RAF), Tab 60, Initial Decision (ID) at 2.[2] She injured her left shoulder in 2008 and again in 2009. ID at 2; RAF, Tab 6 at 24-27. The Office of Workers' Compensation Programs (OWCP) accepted the associated claim in 2009, and the appellant began working in a limited-duty capacity. ID at 2-3; RAF, Tab 6 at 27. She filed a separate OWCP claim in 2012, for a different injury, but the OWCP denied that claim. ID at 3; RAF, Tab 6 at 105.

¶3        The appellant periodically provided the agency with OWCP Forms CA-17, Duty Status Report, describing her restrictions stemming from the 2009 claim, and the agency provided her with work. ID at 2-3; *e.g.*, RAF, Tab 6 at 110. After a period of absence for unrelated reasons, the appellant submitted another Form CA-17, in December 2012, and the agency provided her a limited-duty assignment of 1 hour per day. ID at 3; RAF, Tab 6 at 20-22, 112. The appellant worked in that assignment between December 20, 2012, and February 8, 2013, but then stopped reporting to work and requested unpaid leave. ID at 4; RAF, Tab 49

---

[2] The appellant's initial appeal was dismissed without prejudice and subsequently refiled, at the parties' request, resulting in the separate docket numbers associated with this one matter. *See, e.g.*, IAF, Tab 20; ID at 6-7.

at 15-20. On April 24, 2013, the appellant submitted another Form CA-17 containing similar restrictions to others dating back to her 2009 injury. ID at 4; RAF, Tab 6 at 113. Days later, she returned to work with documentation from a different physician, which described the appellant's need for short breaks in case of an asthma attack, but did not discuss her accepted injury in any way. ID at 4-5; RAF, Tab 6 at 98, 104.

¶4    In May 2013, the agency conducted a search but found no available work within the appellant's restrictions. ID at 5; RAF, Tab 6 at 102. Also in May 2013, the agency denied the appellant's bid for a Platform Operation position on the basis that she failed to provide medical certification showing that she was capable of performing that job.[3] ID at 5; RAF, Tab 6 at 97.

¶5    The appellant filed an equal employment opportunity (EEO) claim concerning these events, alleging that the agency engaged in improper disability discrimination or retaliation for prior EEO activity by ending her limited-duty assignment and denying her bid for the Platform Operation position in May 2013. RAF, Tab 6 at 44-45. In a final agency decision (FAD) denying her claim, the agency characterized the matter as a mixed-case complaint and informed her of the Board's jurisdiction over restoration appeals. *Id*. at 44-45, 66-67. The instant appeal followed. IAF, Tab 1.

¶6    The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. ID at 1; RAF, Tab 46. Because the appellant withdrew her hearing request, the administrative judge issued the decision on the written

---

[3] It is unclear what happened after May 2013. In the initial decision, the administrative judge indicated that the OWCP began providing the appellant with wage replacement benefits for 8 hours per day on June 15, 2013, and the appellant never requested restoration after that date. ID at 5. It appears that the administrative judge may have provided those facts based on a chronology included in an earlier prehearing summary, but we were unable to find clear evidentiary support for the chronology of events and, for reasons that are somewhat unclear, the appellant objected to that portion of the prehearing summary. *Compare* RAF, Tab 44 at 2-3, *with* RAF, Tab 46 at 1.

record.  RAF, Tab 47; ID at 1.  She first found that the appellant was absent from her position due to a compensable injury during the relevant period.  ID at 10-12. Next, the administrative judge found that the appellant recovered sufficiently to return to work in a position with physical requirements less demanding than those required by her Mail Handler position.  ID at 12-13.  She also concluded that the agency denied the appellant's request for restoration when the appellant appeared for work after her extended absence but the agency instructed her to go home because it did not have any available work.  ID at 13-14.  However, the administrative judge found that the appellant failed to prove the final element of a restoration claim—that the agency's denial of her restoration request was arbitrary and capricious.  ID at 14-17.

¶7        Separately, the administrative judge also found that while the appellant presented allegations that the agency improperly denied her bid for a position in May 2013, that matter was not a valid restoration claim, nor was the denial improper.  ID at 17-18.  Based on these findings, the administrative judge dismissed the appellant's appeal for lack of jurisdiction.  ID at 19.  The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.[4]  The agency has filed a response.  PFR File, Tab 3.

The administrative judge properly limited the scope of this appeal.

¶8        As previously discussed, this appeal followed a January 2014 FAD concerning allegations that the agency engaged in improper disability

---

[4] With her petition for review, the appellant submitted evidence that the administrative judge rejected below.  *Gillins v. U.S. Postal Service*, MSPB Docket No. CH-0353-14-0337-I-1, Petition for Review File, Tab 1 at 26-36; *see* RAF, Tab 58; ID at 7.  However, the appellant has not explained, nor are we aware of, how the evidence is relevant to the instant appeal and the dispositive issue of whether the agency's denial of her restoration requests during the pertinent period was arbitrary and capricious.  *See generally Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (recognizing that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

discrimination or retaliation for prior EEO activity by ending the appellant's limited-duty assignment and denying her bid for the Platform Operation position. RAF, Tab 6 at 44-67; IAF, Tab 1. Accordingly, the administrative judge construed this as a restoration appeal stemming from and limited to that FAD and the appellant's compensable shoulder injury. *E.g.*, IAF, Tab 11 at 1; ID at 6. At issue in the FAD was the agency's alleged denial of restoration on May 20, 2013. RAF, Tab 6 at 45. The appellant did not object to the administrative judge's statement of her claims below, despite an opportunity to do so. IAF, Tab 15; *see Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 14 (2016) (declining to consider alleged denials of restoration which did not fall within the time period identified in orders issued by the administrative judge, because the appellant failed to raise her objection to the scope of her claims below).

¶9 On review, the appellant appears to suggest that the administrative judge improperly limited the scope of her appeal and alleges that the agency denied her reasonable accommodation based on her "mental disability" beginning in 2007. PFR File, Tab 1 at 13-15. We are not persuaded. The appellant has not presented any basis for us to conclude that her mental condition might be a compensable injury, cognizable in the context of a restoration claim. *See Hamilton v. U.S. Postal Service*, 123 M.S.P.R. 404, ¶ 14 (2016) (explaining that a compensable injury is defined as one that is accepted by OWCP as job-related and for which medical or monetary benefits are payable from the Employees' Compensation Fund). Nor has she explained her prior failure to correct the administrative judge as to the scope of the appeal below when she had an opportunity to do so. Accordingly, we find that the administrative judge properly limited the scope of this appeal.

The applicable burden of proof to establish jurisdiction in the appellant's restoration claim is preponderant evidence.

¶10 To establish jurisdiction in a restoration appeal filed before March 30, 2015, an appellant must prove by preponderant evidence that: (1) she was absent

from her position due to a compensable injury; (2) she recovered sufficiently to return to duty on a part-time basis or to return to work in a position with less demanding physical requirements than those previously required of her; (3) the agency denied her request for restoration; and (4) the denial was arbitrary and capricious. *Bledsoe v. Merit Systems Protection Board*, 659 F.3d 1097, 1102, 1104 (Fed. Cir. 2011). Effective March 30, 2015, the Board adopted a lower jurisdictional standard in restoration appeals. *Kingsley*, 123 M.S.P.R. 365, ¶ 10; 5 C.F.R. § 1201.57(a)(4), (b). For those more recently filed appeals, jurisdiction and the merits are no longer satisfied by the same burden. *Kingsley*, 123 M.S.P.R. 365, ¶¶ 10, 12; 5 C.F.R. § 1201.57(c)(4). Instead, the nonfrivolous standard applies to jurisdiction and the preponderant evidence standard applies to the merits. *Kingsley*, 123 M.S.P.R. 365, ¶¶ 10, 12; 5 C.F.R. § 1201.57(a)(4), (b), (c)(4).

¶11    Because the appellant filed the instant appeal prior to March 30, 2015, the new standard does not apply in this case. IAF, Tab 1; *see* Rules and Regulations of the Merit Systems Protection Board, 80 Fed. Reg. 4,489, 4,489 (Jan. 28, 2015). However, at times, the administrative judge mistakenly referenced the new jurisdictional standard. *Compare* ID at 7 (properly citing the old preponderant evidence standard), *with* ID at 8-9 (improperly referring to the new nonfrivolous standard). To be clear, the old standard applies, requiring that the appellant prove the elements of her restoration claim by preponderant evidence to establish jurisdiction.

¶12    On review, the appellant suggests that it was improper to dismiss her appeal on jurisdictional grounds and not reach the merits because the administrative judge already had found jurisdiction over the matter. PFR File, Tab 1 at 2-4 (referencing IAF, Tab 19 at 3). The appellant is mistaken, possibly due to the aforementioned confusion and changed standards. Although the administrative judge did find that the appellant presented nonfrivolous allegations and was entitled to a hearing, if she wanted one, IAF, Tab 19 at 3, the administrative judge

did not find that the appellant proved the elements of her restoration appeal by preponderant evidence, as required to establish jurisdiction in this case, ID at 18-19.

<u>The appellant met her burden of proving the merits of her claim that the agency arbitrarily and capriciously denied her restoration.</u>

¶13    Because the appellant may establish both jurisdiction and the merits of her appeal by preponderant evidence as to the same four factors, we will proceed directly to a discussion of the merits of her restoration claim. *See Kingsley*, 123 M.S.P.R. 365, ¶ 10-12 (explaining an appellant's burden of proof under the Board's prior and amended regulations). As detailed above, the administrative judge found that the appellant met her burden for the first three elements of her restoration claim, and we discern no basis for concluding otherwise. ID at 10-14. However, the administrative judge found that the claim generally failed because the appellant did not prove the final element—that the agency's denial of her restoration request was arbitrary and capricious. ID at 14-17. Among other things, the administrative judge noted that the agency only denied the appellant's restoration request after an unsuccessful search for available work within her extensive medical restrictions and commuting area. ID at 15; RAF, Tab 6 at 99-103. For the reasons that follow, we disagree.

¶14    We first recognize a change in the standard that applies in this appeal. While this appeal was pending review, we issued a decision clarifying the proper standard for the fourth prong of a partial restoration appeal such as this. *Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 14. In *Cronin*, we clarified that a denial of restoration is arbitrary and capricious if, and only if, the agency failed to meet its obligations under 5 C.F.R. § 353.301(d). *Id*. We explicitly overturned prior precedent, including *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400 (2012), to the extent that such precedent held that a denial of restoration may be arbitrary and capricious based on an agency's failure to comply with its self-imposed restoration obligations, such as those provided in the Postal Service's Employee

and Labor Relations Manual (ELM). *Cronin*, 2022 MSPB 13, ¶¶ 15-20. Accordingly, an agency is only obliged to "make every effort to restore" a partially recovered employee "in the local commuting area" and "according to the circumstances in each case." *Id*., ¶ 14; 5 C.F.R. § 353.301(d). To the extent that the administrative judge relied on *Latham* and considered whether the agency complied with ELM provisions, that analysis was improper in light of *Cronin*. *See, e.g*., ID at 12, 17, 19. Similarly, we decline to review the appellant's claim that the agency violated the applicable collective bargaining agreement when it denied her a position on which she bid. IAF, Tab 7 at 36-37. Any such failure does not fall within the agency's restoration obligations under 5 C.F.R. § 353.301(d). *See Cronin*, 2022 MSPB 13, ¶ 20.

¶15     Next, we find that the administrative judge erred in concluding that the agency conducted a proper search for available vacant positions. Pursuant to 5 C.F.R. § 353.301(d), the agency was obligated to search the local commuting area for positions. Yet, all of the documentation pertaining to the agency's search in and around May 2013, when the appellant returned from her lengthy absence, suggests that the agency only searched its Youngstown facility, where she had previously worked. RAF, Tab 6 at 99-103. The documentation contains no indication that the agency expanded its search to include any other facility within the local commuting area. At times, the agency appears to have conceded as much, arguing that the appellant failed to identify available work within the half-hour driving restriction her physician prescribed. RAF, Tab 53 at 9; *see, e.g*., RAF, Tab 6 at 110-14. However, that half-hour driving restriction was prescribed in the context of the appellant's workday, not her commute. RAF, Tab 6 at 110-14. Moreover, even if the appellant was restricted to a half hour of driving per calendar day, we discern no basis for concluding that the appellant was restricted from traveling throughout the local commuting area in some other way.

¶16     We further find the agency's search improper for another reason. The appellant has argued that the Form CA-17 describing her medical restrictions

during the relevant period did not preclude her from working an 8-hour workday. PFR File, Tab 1 at 4-5. The administrative judge disagreed, finding that the CA-17 Form explicitly stated otherwise. ID at 2 n.2. We conclude that this finding was in error.

¶17 The form at issue lists a variety of functional activities and the number of hours they are required for the appellant's position, providing spaces in which the appellant's physician could indicate whether or to what extent the appellant's condition prevented her from performing those activities. RAF, Tab 6 at 112-13. For example, in the December 2012 and April 2013 forms, the physician's markings indicated that the appellant could only twist for 1 of the 2 hours typically required of her position. *Id.* The physician left blank the spaces in which he could describe any limitations on the appellant's ability to sit, stand, and walk a total of 8 hours per day. *Id.*

¶18 Based upon the restrictions identified on these forms, the administrative judge concluded that the appellant could not complete an 8-hour workday. ID at 2 n.2. However, on the Form CA-17, the appellant's physician indicated that she required 3 minutes to stretch for every 20 minutes of repetitive work, but could work overtime within her restrictions. RAF, Tab 6 at 112-13. Because he indicated that the appellant could work overtime, it is evident that the physician had not concluded she was unable to complete an 8-hour workday. *Id.*

¶19 The distinction described above is particularly relevant because the record strongly suggests that the agency made the same mistake. The limited-duty assignment the agency gave the appellant in December 2012 was for only 1 hour of work per day. *Id.* at 106. Then, after her absence that began in February 2013, when the appellant attempted to return to work in May 2013, agency officials exchanged emails about her return, repeatedly alluding to an ability to work an hour or less. *Id.* at 99, 101. Additionally, in an affidavit submitted in concert with the appellant's EEO claim, her supervisor repeatedly asserted that the

appellant was only able to work an hour per day, with breaks and other restrictions. RAF, Tab 15 at 157-58, 161.

¶20     We were unable to locate any explanation for the agency's belief that the appellant was only capable of working 1 hour per day. Instead, our conclusion that the appellant was not so limited is compounded by the fact that the appellant's March 2011 CA-17 Form included virtually identical restrictions, to which the agency offered and the appellant seemingly accepted a full-time position. *Compare* RAF, Tab 6 at 110, *with* RAF, Tab 45 at 118-20. In other words, the record suggests that the appellant's limitations remained the same between 2011 and 2013, but the agency conducted vastly more restricted searches for available work in 2013.

¶21     The Board considered similar circumstances in *Scott v. U.S. Postal Service*, 118 M.S.P.R. 375, ¶ 13 (2012). In that case, the agency only searched for 2 hours of work per day based on medical restrictions indicating that the appellant was limited to 2 hours per day for certain tasks. *Id*., ¶¶ 8, 13. The Board found that the agency's failure to search for tasks that could provide the appellant with a 40-hour workweek was an improper search and an arbitrary and capricious denial of restoration. *Id*., ¶ 13. We reach the same conclusion here. The record shows, by preponderant evidence, that the agency conducted an improper search in May 2013, the period at issue in the FAD and this appeal. Accordingly, we find that the appellant met her burden of proving that the agency's May 2013 denial of restoration was arbitrary and capricious.

¶22     In a case like this one, in which the denial of restoration was arbitrary and capricious for lack of a proper job search, the appropriate remedy is for the agency to conduct an appropriate search within the local commuting area retroactive to the date of the appellant's request for restoration, and to consider her for any suitable vacancies. *Scott*, 118 M.S.P.R. 375, ¶ 14. The remedy of a retroactive search for available positions will be sufficient to correct the wrongful action and substitute it with a correct one based on the appropriate search. *Davis*

*v. U.S. Postal Service*, [120 M.S.P.R. 122](#), ¶ 14 (2013). It will not, however, put the appellant in a better position than she was in before the wrongful action because the agency may not find an appropriate available position. The appellant may be entitled to back pay only if the agency's restorative search uncovers an available position to which it could have restored her. *Id.*

The record must be further developed to address the appellant's claim of disability discrimination.

¶23      As recognized in the initial decision, the appellant has, at times, presented allegations of harmful error, hostile work environment, and race discrimination. ID at 6. On review, the appellant has not clearly identified anything in the voluminous record supporting those allegations. Therefore, we will not address them further. *See Tines v. Department of the Air Force*, [56 M.S.P.R. 90](#), 92 (1992) (explaining that a petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record); *Weaver v. Department of the Navy*, [2 M.S.P.R. 129](#), 133 (1980) (finding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence in the record which demonstrates the error).

¶24      The appellant has, however, reasserted her allegation that the agency engaged in disability discrimination by failing to accommodate her. PFR File, Tab 1 at 14-15. To the extent that this allegation pertains to the sole matter before us—the May 20, 2013 denial of restoration—we find that the record requires further development.

¶25      The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act of 1973. *Pridgen v. Office of Management and Budget*, [2022 MSPB 31](#), ¶ 35. The Rehabilitation Act has incorporated the standards of the Americans with Disabilities Act (ADA), as amended by the

Americans with Disabilities Act Amendments Act of 2008. *Id.* Therefore, the Board applies those standards here to determine if there has been a Rehabilitation Act violation. *Id.* In particular, the ADA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8). An employer is also required to provide reasonable accommodations to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5). Therefore, an appellant may establish a disability discrimination claim based on failure to accommodate by showing that: (1) she is a disabled person; (2) she is a qualified individual with a disability; (3) the action appealed was based on her disability; and (4) to the extent possible, that there was a reasonable accommodation under which she believes she could perform the essential duties of her position or of a vacant position to which she could be reassigned. *See Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 28-29. Because the agency did not conduct a proper search for available work, it would be premature to resolve the appellant's claim of failure to accommodate. Accordingly, we must remand that claim for further adjudication.

## ORDER

¶26 We remand this appeal for further consideration of the appellant's failure to accommodate claim after additional record development as described above. In light of this remand, the administrative judge should provide the appellant with an opportunity to request a hearing on her disability discrimination claim. If the appellant requests a hearing, the administrative judge should convene the hearing to address the failure to accommodate issue. On remand, the administrative judge should issue a new initial decision that makes findings regarding the appellant's disability discrimination claim.

¶27     In addition, we ORDER the agency to conduct a proper job search retroactive to May 20, 2013.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶28     In the event that the agency's restorative job search uncovers an available position to which it could have restored the appellant, we ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶29     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶30     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶31     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

FOR THE BOARD:                    _____/s/ for_____

                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2.      The following information must be included on AD-343 for Restoration:
    a.      Employee name and social security number.
    b.      Detailed explanation of request.
    c.      Valid agency accounting.
    d.      Authorized signature (Table 63).
    e.      If interest is to be included.
    f.      Check mailing address.
    g.      Indicate if case is prior to conversion.  Computations must be attached.
    h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.      Must provide same data as in 2, a-g above.
    b.      Prior to conversion computation must be provided.
    c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.